UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA                  :

             – v. –                       :            S1 11 Cr. 111 (NRB)

CORNEILLE DATO,                           :

                    Defendant.            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA**

                                        PREET BHARARA
                                        United States Attorney for the
                                        Southern District of New York
                                        Attorney for the United States of America

CHRISTIAN R. EVERDELL
AIMEE HECTOR
GLEN A. KOPP
Assistant United States Attorneys
      - Of Counsel -

## CONTENTS

I. Preliminary Statement ................................................................................................. 1

II. Background .............................................................................................................. 1

    A.     Introduction................................................................................................ 1

    B.     The Defendant's Criminal Conduct.......................................................... 2

    C.     The Defendant's Guilty Plea..................................................................... 3

    D.     The Presentence Investigative Report........................................................ 4

III.   Argument ................................................................................................................ 5

    A.     Applicable Law .......................................................................................... 5

    B.     The Court Should Impose a Significant Sentence Greater than Five Years ................... 7

    C.     The Defendant's Arguments for Extreme Leniency are Unavailing ............................. 9

    D.     Probation's Recommended Sentence Is Insufficient to Meet the Goals of Sentencing. 11

IV. Conclusion ............................................................................................................. 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                 :

      – v. –                               :           S1 11 Cr. 111 (NRB)

CORNEILLE DATO,                          :

            Defendant.            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## I. PRELIMINARY STATEMENT

The Government respectfully submits this memorandum in connection with the

sentencing of Corneille Dato, which is scheduled for August 12, 2013, and in response to Dato's

sentencing letter of August 2, 2013 ("Deft. Sent. Ltr.").  The defendant participated in a

conspiracy to import hundreds of kilograms of cocaine and heroin into the United States for the

benefit of the Taliban.  While this conduct calls for a significant sentence, in light of the factors

described below, including Dato's relative culpability, the Government submits that a non-

Guidelines sentence would be appropriate for this defendant.

## II. BACKGROUND

**A.     Introduction**

From the spring of 2010, through early 2011, agents of the Drug Enforcement

Administration ("DEA") conducted an undercover investigation targeting drug trafficking in

West Africa, among other conduct.  The DEA initially used two confidential sources ("CS-1"

and "CS-2"; collectively, the "Confidential Sources") to pose as representatives of the Taliban

and to meet with targets of the investigation to discuss a proposed narcotics transaction involving

hundreds of kilograms of cocaine and heroin.  During the course of the investigation, the

Confidential Sources met with Maroun Saade, a co-defendant, as well as Dato and others, in a

number of African countries to negotiate a deal that was to include the importation of hundreds

of kilograms of cocaine and heroin into the United States, among other places, for the benefit of

the Taliban.  The Taliban, the Confidential Sources informed the defendants, including Dato,

would then use the proceeds of the narcotics sales to purchase weapons.

**B.      The Defendant's Criminal Conduct[1]**

In 2010, Saade reached out to Dato through another co-defendant, Martin Rouf

Bouraima, to set up a meeting in Lome, Togo.  Dato and Saade met in Lome.  Saade explained to

Dato that he had some "friends" who were interested in investing in Benin and he wanted Dato's

help with the project.  According to Dato, Saade did not provide Dato with details of the project,

but said that Dato would learn more when his friends arrived in West Africa for meetings.

Thereafter, Dato attended about four more meetings with Saade, Bouraima, and co-defendant

Walid Nasr.  Although Dato contends that drugs were not explicitly discussed at these meetings,

he has admitted that he assumed that the project with Saade's friends would involve narcotics.  It

later was made clear that the project would involve the transportation of large quantities of

cocaine and heroin, and Dato thereafter agreed to (i) pick up the drugs at sea and transport them

to the shore and (ii) safeguard the drugs in Benin once the drugs were delivered to the stash

houses.

In October 2010, Dato attended two meetings in Cotonou, Benin, with the Confidential

Sources regarding the narcotics importation transaction.  On October 6, 2011, Dato, Saade, and

---

[1] The details of the defendant's criminal conduct are culled from the evidence in the case, including the recorded meetings, as well as information the defendant provided to the Government during his safety-valve proffer sessions.

Bouraima met with the Confidential Sources. Saade introduced Dato as someone with whom he had worked in the past and who could provide security for the drugs because of his (Dato's) contacts with an individual who managed the harbor and the airports in Benin. Dato advised the Confidential Sources that Saade had told him about the plan to ship heroin to West Africa. Dato told the Confidential Sources that he would buy a fishing boat that could be used to pick up the heroin from the shipping vessel offshore and then transport the heroin to Benin. At the close of the meeting, the Confidential Sources told Dato that they would be sending the heroin from West Africa to New York on planes. Dato acknowledged his understanding that the final destination for the heroin would be the United States. (PSR ¶ 34).

Dato and Bouraima met again with the Confidential Sources the next day. At that meeting, CS-1 told Dato and Bouraima that Saade's contacts in the United States would transfer the drug proceeds back to West Africa where the money would be used to buy weapons for the Taliban. Dato indicated that he understood. Dato further stated that he could send one ton or more of cocaine to Cotonou, Benin, and then transfer it to Ghana, where CS-2 could arrange for it to be placed on commercial flights to New York. (PSR ¶ 35). Dato had no further contact with the Confidential Sources after the October 7, 2010 meeting.

## C.    The Defendant's Guilty Plea

On January 24, 2013, Dato pleaded guilty to Counts Two and Three of Superseding Indictment S1 11 Cr. 111 (NRB) (the "Superseding Indictment"), pursuant to a plea agreement with the Government (the "Plea Agreement"). Count Two charges the defendant with participating in a conspiracy to distribute five kilograms and more of cocaine knowing and intending that the cocaine would be imported into the United States, from at least in or about June 2010, up to and including in or about February 2011, in violation of Title 21, United States

Code, Sections 959 and 963.  Count Three charges the defendant with participating in a conspiracy to distribute one kilogram and more of heroin knowing and intending that the heroin would be imported into the United States, from at least in or about June 2010, up to and including in or about February 2011, in violation of Title 21, United States Code, Sections 959 and 963.

Pursuant to the terms of the Plea Agreement, the parties stipulated to an advisory Guidelines offense level of 35, calculated as follows:  (1) the base offense level is 38, pursuant to U.S.S.G. § 2D1.1(c)(1), because the conspiracy involved greater than 150 kilograms of cocaine; and (2) a three-level reduction for acceptance of responsibility is warranted, pursuant to U.S.S.G. § 3E1.1(b), because of the defendant's timely guilty plea.  The defendant is in Criminal History Category I because he has no prior criminal history.  Based on this calculation, the parties agreed that the advisory Guidelines range for the defendants is 168 to 210 months' imprisonment, with a mandatory minimum term of imprisonment of 120 months.  The defendant reserved the right, however, to seek to qualify for relief from the mandatory sentencing provisions of Title 21 pursuant to Title 18, United States Code, Section 3553(f), and/or for a reduction in sentence pursuant to U.S.S.G. §§ 2D1.1(b)(16) and 5C1.2.  Since entering into the Plea Agreement, the defendant has fulfilled the "safety valve" requirements of 18 U.S.C. 3553(f), to the satisfaction of the Government.  Accordingly, the Government agrees that the Guidelines calculation set forth in the Presentence Investigation Report ("PSR"), as described below, is correct.

**D.    The Presentence Investigative Report**

The Probation Office issued Dato's PSR on June 11, 2013.  The Probation Office concurred with the parties' calculation of the defendant's offense level, but also included a two-level reduction in the offense level, because of the defendant's successful post-plea safety valve

proffer, pursuant to § 2D1.1(b)(16). As a result, the Probation Office calculated the offense level for the defendant at 33, resulting in an applicable Guidelines range of 135 to 168 months' imprisonment. (PSR ¶ 102). The Probation Office further noted that the Court is not bound by the mandatory minimum term of 120 months' imprisonment.

The Probation Office recommends concurrent five-year terms of imprisonment for Counts Two and Three for a total term of imprisonment of five years. (*See* PSR at p. 23). The Probation Office based its recommendation for Dato primarily on the defendant's family circumstances and his role in the offense, as well as the fact that he was motivated primarily by financial gain as opposed to a desire to harm U.S. citizens. (*See* Dato PSR at pp. 23-24).

## III.  ARGUMENT

Dato willingly joined and participated in a conspiracy that aimed to import hundreds of kilograms of cocaine and heroin into the United States. The defendant participated in this conspiracy knowing that the proceeds of the drug sales would be used to help the Taliban purchase weapons. This conduct is extremely serious, and there is a need to deter both this defendant and others from engaging in such conduct. The defendant's crime therefore calls for a significant term of imprisonment greater than that requested by the defendant (time-served) or the Probation Office (five years). Nonetheless, the Government acknowledges that a non-Guidelines sentence would be appropriate given the relative culpability of the defendant in relation to other participants in the conspiracy.

### A.    Applicable Law

The United States Sentencing Guidelines (the "Guidelines") still provide strong guidance to the Court in light of *United States* v. *Booker*, 543 U.S. 220 (2005) and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Although *Booker* held that the Guidelines are no longer

mandatory, it held also that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing.  543 U.S. at 264.  "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" — that "should be the starting point and the initial benchmark."  *Gall* v. *United States*, 552 U.S. 38, 50 (2007).

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, *see id.* § 3553(a)(2); "the kinds of sentences available," *id.* § 3553(a)(3); the Guidelines range itself, *see id.* § 3553(a)(4); any relevant policy statement by the Sentencing Commission, *see id.* § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and "the need to provide restitution to any victims," *id.* § 3553(a)(7).  *See Gall*, 552 U.S. at 49-50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense
>
> (B)    to afford adequate deterrence to criminal conduct;
>
> (C)    to protect the public from further crimes of the defendant; and
>
> (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines

supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6.  Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 522 U.S. at 46; *see also Rita*, 551 U.S. at 349.  To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance."  *Gall*, 552 U.S. at 50.

**B.      The Court Should Impose a Significant Sentence Greater than Five Years**

Pursuant to *Gall*, the sentencing analysis starts with the advisory Guidelines range.  *See also* 18 U.S.C. § 3553(a)(4).  The Guidelines range reflects the considered judgment of the Sentencing Commission, after examining "tens of thousands of sentences and work[ing] with the help of many others in the law enforcement community over a long period of time" in an effort to fulfill the same objectives set out in Section 3553(a).  *Rita*, 551 U.S. at 349.  The Guidelines "seek to embody the § 3553(a) considerations, both in principle and in practice," and accordingly, the Guidelines "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives."  *Id.*

Although a non-Guidelines sentence would be appropriate here, in light of the nature of the offense and the need to address the goals of punishment and deterrence, a time served or five-year sentence would not be sufficient.  The criminal conduct in this case was indisputably

serious, involving an agreement with respect to huge quantities of cocaine and heroin that were to be imported into the United States. Perhaps even more significantly, the ultimate beneficiary of these transactions was represented to Dato to be the Taliban, and it was made clear to the defendant that the Taliban intended to utilize at least a portion of the narcotics proceeds to purchase weapons.

While Dato was, along with Bouraima, the last defendant to join the narcotics conspiracy, he agreed to play an important role in the scheme: to provide transportation and security for hundreds of kilograms of cocaine and heroin in West Africa that was to be sent to the United States. Dato represented himself to be an experienced narcotics trafficker, who had worked with Saade before. Indeed, Dato confirmed in his safety-valve proffer that he had helped transport a multi-kilogram shipment of cocaine by ship from Venezuela to Lome, Togo in the past. Dato also stated that he would help secure the heroin and cocaine in the safe houses in Benin.

Moreover, Dato understood that the ultimate beneficiary of the narcotics transaction was the Taliban and that the Taliban would use the proceeds from the drug sales to buy weapons. Thus, a significant sentence is necessary and appropriate to provide adequate punishment for the defendants' role in a significant, global narcotics conspiracy.

A sentence of greater than five years would also serve the goals of sentencing by providing for both specific and general deterrence. It would powerfully impress upon the defendant that the costs of engaging in a narcotics conspiracy that sought to supply narcotics to the U.S., and to support the Taliban, far outweigh the anticipated financial benefits. Further, a significant sentence would send a message to other similarly situated individuals who might choose to profit from narcotics trafficking that the United States will not tolerate such conduct, and that severe penalties will follow.

8

In sum, the defendant engaged in serious criminal conduct, the ultimate goal of which was to import large quantities of cocaine and heroin into the United States in order to fund the Taliban's efforts to combat American forces abroad.  That conduct calls for a significant sentence greater than the approximately 30 months' of time that the defendant has already spent in jail or the five years recommended by the Probation Office.

**C.      The Defendant's Arguments for Extreme Leniency are Unavailing**

In light of the defendant's conduct, the time-served sentence (approximately 30 months' imprisonment) that the defendant seeks would constitute a significant variance from the recommended Guidelines sentence and would not comport with the goals of sentencing.

Dato makes multiple arguments for a time-served sentence.  Among the reasons he advances for a more than100-month downward variance in his sentence are:  (i) his limited role in the offense (Deft. Sent Ltr. at 15); (ii) his lack of a political or ideological motive to engage in the criminal conduct (*id*. at 8); (iii) his age and religious growth in prison make him an unlikely candidate to recidivate (*id*. at 9-10); (iv) the additional time he will spend in immigration custody (*id*. at 11); (v) his conditions of confinement, including his lack of family visits and his medical conditions (*id*. at 11-12); (vi) ██ "██-██ ███████ (*id*. at 17); and (vii) his extraordinary family circumstances (*id*. at 17-19).

These arguments, taken individually or cumulatively, do not justify the length of the downward variance that the defendant seeks.  The Government has already acknowledged that Dato's role in the offense makes him less culpable than most others in the case, and thus deserving a non-Guidelines sentence.  While the Government does not dispute that Dato's detention is a contributing factor to his difficult family situation, it was the defendant's choice to engage in a multi-kilogram international narcotics conspiracy with purported representatives of

9

the Taliban in the hopes of a large monetary reward.  He knowingly took the risk that he would be caught and incarcerated, to his family's detriment.  He is not unlike many international narcotics trafficking defendants who grew up in poverty and chose to engage in illegal activity, and whose crimes resulted in incarceration far from their homes and family.  Moreover, Dato's desire to support his family by participating in these crimes is a motivation shared by a great number of defendants.  It does not mitigate the seriousness of the crime or merit the kind of leniency that he is requesting from this Court.

Dato's financial motive to engage in this offense should not be considered a mitigating factor.  (*See* Deft. Ltr. at 8).   While he may not be politically or ideologically driven, and he may not be anti-American, he nonetheless chose to engage in a large-scale international narcotics trafficking scheme knowing that it would directly benefit the Taliban.  Dato's failure to weigh the consequences of his actions and his indifference to the beneficiaries of his criminal conduct should not result in a sentencing benefit.

Additionally, Dato should not get credit for potential time that might stay in immigration custody pending his deportation.  Dato has already consented to the issuance of a judicial order of removal pursuant to his plea agreement.  Therefore, any additional time that Dato might be held in immigration custody should be limited.  Furthermore, this circumstance does not distinguish Dato from any other international narcotics trafficking defendant who will be deported following his sentence.  It is not a basis for leniency.

10

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████ .

**D.    Probation's Recommended Sentence Is Insufficient to Meet the Goals of Sentencing**

The Government respectfully disagrees with the Probation Office's recommendation of a five-year sentence for the defendant.  (PSR at p. 23).  The Probation Office explains its justification for a proposed six-year downward variance by reference to the absence of any anti-U.S. motive for defendant's commission of the crimes, the defendant's family circumstances, and his role in the offense.  (*Id*. at p. 24).  The factors that the Probation Office relied on do not justify such a substantial variance.  For the same reasons stated above, the deleterious impact of Dato's imprisonment on his family does not call for the five-year sentence recommended by Probation.   Further, this was not Dato's first involvement in a narcotics trafficking transaction.  In his safety-valve proffer, he acknowledged participating in a shipment of cocaine from Venezuela to Togo in around 2004.  Finally, Dato's role in the offense does not warrant a five-year sentence.  He was going to be responsible for transporting large amounts of narcotics from shipping vessels to the shore and securing the narcotics on land in advance of sending the narcotics to the United States.  A five-year sentence would not reflect the seriousness of Dato's criminal conduct, nor would it sufficiently deter the defendant or other similarly situated individuals from future crimes of the kind Dato committed.

11

## IV. CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence for the defendant greater than five years' imprisonment.

Dated:      New York, New York
             August 8, 2013

Respectfully submitted,

PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States of America

By:      /s/
          Christian Everdell
          Aimee Hector
          Glen A. Kopp
          Assistant United States Attorneys
          Tel.:  (212) 637-2556/2203/2210

**Affirmation of Service**

GLEN A. KOPP, pursuant to Title 28, United States Code, Section 1746, hereby declares under the penalty of perjury, that he is employed as an Assistant U.S. Attorney in the Southern District of New York, and that, on August 8, 2013, he caused copies of The Government's Sentencing Memorandum for Corneille Dato to be served via electronic notification and email:

Bertram Okpokwasili, Esq.
66 York Street, 2nd Floor
Jersey City, NJ 07302


/s/
GLEN A. KOPP
Assistant United States Attorney

13