UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA      :

     – v. –      :      S1 11 Cr. 111 (NRB)

MARTIN RAOUF BOURAIMA,      :

     Defendant.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## THE GOVERNMENT'S SENTENCING MEMORANDUM

PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States of America

CHRISTIAN R. EVERDELL
AIMEE HECTOR
GLEN A. KOPP
Assistant United States Attorneys
     - Of Counsel -

**CONTENTS**

I.  Preliminary Statement ........................................................................................................... 1

II. Background ............................................................................................................................ 1

    A.     Introduction.................................................................................................................... 1

    B.     The Defendant's Criminal Conduct ............................................................................. 2

    C.     The Defendant's Guilty Plea......................................................................................... 4

    D.     The Presentence Investigative Report........................................................................... 5

III.   Argument ............................................................................................................................ 5

    A.     Applicable Law ............................................................................................................. 6

    B.     The Court Should Impose a Substantial Sentence ....................................................... 7

    C.     The Defendant's Arguments for Leniency are Unavailing............................................ 9

IV.  Conclusion ......................................................................................................................... 11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA           :

    – v. –                              :           S1 11 Cr. 111 (NRB)

MARTIN RAOUF BOURAIMA,             :

       Defendants.              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## I. PRELIMINARY STATEMENT

The Government respectfully submits this memorandum in connection with the

sentencing of Martin Raouf Bouraima ("Bouraima"), which is scheduled for August 12, 2013,

and in response to Bouraima's sentencing letter of July 23, 2013 ("Bouraima Sent. Ltr.").  The

defendant participated in a conspiracy to import hundreds of kilograms of cocaine and heroin

into the United States for the benefit of the Taliban.  Both the seriousness of the conduct, and the

compelling need to deter both Bouraima and others from future criminal activity of this type, call

for a substantial sentence.  While the Government agrees that a sentence below the applicable

sentencing guidelines range is appropriate in this case, the Government respectfully submits that

the offense warrants a sentence above the five years' imprisonment recommended by the

Probation Office.

## II. BACKGROUND

### A.    Introduction

From the spring of 2010, through early 2011, agents of the Drug Enforcement

Administration ("DEA") conducted an undercover investigation targeting drug trafficking in

West Africa, among other conduct.  The DEA initially used two confidential sources ("CS-1" and "CS-2"; collectively, the "Confidential Sources") to pose as representatives of the Taliban and to meet with targets of the investigation to discuss a proposed narcotics transaction involving hundreds of kilograms of cocaine and heroin.  During the course of the investigation, the Confidential Sources met with Maroun Saade, a co-defendant, as well as Bouraima and others, in a number of African countries to negotiate a deal that was to include the importation of hundreds of kilograms of cocaine and heroin into the United States, among other places, for the benefit of the Taliban.  The Taliban, the Confidential Sources informed the defendants, including Bouraima, would then use the proceeds of the narcotics sales to purchase weapons.

**B.      The Defendant's Criminal Conduct[1]**

In August 2010, Saade contacted Bouraima in Benin.  Saade insisted that he urgently needed Bouraima to meet him in Lome, Togo.  Bouraima agreed and travelled to Lome.  There, Saade advised Bouraima that people Saade knew were going to be transporting narcotics into Benin, including by boat, and that he (Saade) needed Bouraima's assistance.[2]  Bouraima agreed to help Saade and to bring his co-defendant, Corneille Dato, into the operation.  Bouraima had met Dato years ago and understood that Dato had contacts at the port in Benin that could be useful for the operation Saade had proposed.  Thereafter, Bouraima reached out to Dato and arranged for Dato to meet with Saade.  Bouraima, Dato, and Saade met in Benin and discussed the details of the narcotics transaction.  Among other things, the three men, who were also joined

---

[1] The details of the defendant's criminal conduct are culled from the evidence in the case, including the recorded meetings, as well as information the defendant provided to the Government during his safety-valve proffer sessions.

[2] By that time, the Confidential Sources had already spoken with Saade, Walid Nasr, and Francis Ahissou, on several occasions at in-person meetings and in phone calls to discuss the proposed narcotics transaction.

by co-defendant Walid Nasr, discussed the need to obtain stash houses to store the narcotics once it was transported to Benin, and later Ghana.

The Confidential Sources returned to Africa to participate in several meetings with the defendants in October 2010. It was during this time, on October 5, 2010, that Saade first introduced Bouraima to the Confidential Sources in Benin. At that meeting, in the presence of Bouraima, Saade discussed the heroin shipment and explained how he would arrange for the heroin to be unloaded from the ship using smaller fishing boats. Saade further indicated that Bouraima would transport the drugs to storage houses. After the meeting, Saade, Bouraima, and the Confidential Sources traveled by car to inspect several different houses that would be used to store the heroin. (PSR ¶ 33).

The following day, Saade, Bouraima, Dato and the Confidential Sources, continued the discussions. At the close of the meeting, the Confidential Sources told Bouraima and Dato that they would be sending the heroin to New York on planes. Bouraima indicated that he understood the final destination for the heroin. (PSR ¶ 34).

On October 7, 2010, Bouraima and Dato met again with the Confidential Sources. At that meeting, CS-1 told both Bouraima and Dato that Saade's contacts in the United States would transfer the drug proceeds back to West Africa where they would be used to buy weapons for the Taliban. Bouraima indicated that he understood.

On January 6, 2011, Bouraima spoke on the telephone with CS-1. During the call, CS-1 informed Bouraima that the heroin shipment would arrive within the next few weeks and confirmed that Bouraima would assist in transporting the cocaine and heroin to the airport in Ghana so that it could be sent to the United States via a commercial flight. (PSR ¶ 41).

Bouraima was arrested in Liberia on February 10, 2011.

**C.    The Defendant's Guilty Plea**

On November 8, 2012, Bouraima pled guilty to Counts Two and Three of Superseding Indictment S1 11 Cr. 111 (NRB) (the "Superseding Indictment"), pursuant to a plea agreement with the Government (the "Plea Agreement").  Count Two charges the defendant with participating in a conspiracy to distribute five kilograms and more of cocaine knowing and intending that the cocaine would be imported into the United States, from at least in or about June 2010, up to and including in or about February 2011, in violation of Title 21, United States Code, Sections 959 and 963.  Count Three charges the defendant with participating in a conspiracy to distribute one kilogram and more of heroin knowing and intending that the heroin would be imported into the United States, from at least in or about June 2010, up to and including in or about February 2011, in violation of Title 21, United States Code, Sections 959 and 963.

Pursuant to the terms of the Plea Agreement, the parties stipulated to an advisory Guidelines offense level of 35, calculated as follows:  (1) the base offense level is 38, pursuant to U.S.S.G. § 2D1.1(c)(1), because the conspiracy involved greater than 150 kilograms of cocaine; and (2) a three-level reduction for acceptance of responsibility is warranted, pursuant to U.S.S.G. § 3E1.1(b), because of the defendant's timely guilty plea.  The defendant is in Criminal History Category I because he has no prior criminal history.  Based on this calculation, the parties agreed that the advisory Guidelines range is 168 to 210 months' imprisonment, with a mandatory minimum term of imprisonment of 120 months.  The defendant reserved the right, however, to seek to qualify for relief from the mandatory sentencing provisions of Title 21 pursuant to Title 18, United States Code, Section 3553(f), and/or for a reduction in sentence pursuant to U.S.S.G. §§ 2D1.1(b)(16) and 5C1.2.  Since entering into the Plea Agreement, the defendant has fulfilled

4

the "safety valve" requirements of 18 U.S.C. 3553(f), to the satisfaction of the Government. Accordingly, the Government agrees that the Guidelines calculations set forth in the Presentence Investigation Report ("PSR"), as described below, is correct.

**D.      The Presentence Investigative Report**

The Probation Office issued Bouraima's PSR on July 2, 2013.  The Probation Office concurred with the parties' calculation of the defendant's offense level, but also included a two-level reduction in the offense level because of the defendant's successful post-plea safety valve proffer,  pursuant to § 2D1.1(b)(16).  As a result, the Probation Office calculated the offense level at 33, resulting in an applicable Guidelines range of 135 to 168 months' imprisonment. (PSR ¶ 94).   The Probation Office further noted that the Court is not bound by the mandatory minimum term of 120 months' imprisonment.

The Probation Office recommends concurrent five-year terms of imprisonment for Counts Two and Three for a total term of imprisonment of five years.  (*See* PSR p. 23).  The Probation Office based its recommendation primarily on the defendant's difficult upbringing and family circumstances, as well as his role in the offense.  (*See* PSR at p. 24).

### III.  ARGUMENT

Bouraima willingly joined and participated in a conspiracy that aimed to import hundreds of kilograms of cocaine and heroin into the United States.  The defendant participated in this conspiracy knowing that the proceeds of the drug sales would be used to help the Taliban purchase weapons.  This conduct is extremely serious, and there is a need to deter both this defendant and others from engaging in such conduct.  The defendant's crime therefore calls for a significant term of imprisonment greater than that requested by the defendant (time-served) or the Probation Office (five years).  Nonetheless, the Government acknowledges that a non-

Guidelines sentence would be appropriate given the relative culpability of the defendant in relation to others in the conspiracy.

**A.      Applicable Law**

The United States Sentencing Guidelines (the "Guidelines") still provide strong guidance to the Court in light of *United States* v. *Booker*, 543 U.S. 220 (2005) and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005).  Although *Booker* held that the Guidelines are no longer mandatory, it held also that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing.  543 U.S. at 264.  "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" — that "should be the starting point and the initial benchmark."  *Gall* v. *United States*, 552 U.S. 38, 50 (2007).

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, *see id.* § 3553(a)(2); "the kinds of sentences available," *id.* § 3553(a)(3); the Guidelines range itself, *see id.* § 3553(a)(4); any relevant policy statement by the Sentencing Commission, *see id.* § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and "the need to provide restitution to any victims," *id.* § 3553(a)(7).  *See Gall*, 552 U.S. at 49-50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A)      to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense
>
> (B)      to afford adequate deterrence to criminal conduct;

(C)     to protect the public from further crimes of the defendant; and

(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6. Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 522 U.S. at 46; *see also Rita*, 551 U.S. at 349. To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.

**B.     The Court Should Impose a Substantial Sentence**

A significant sentence is appropriate in light of the nature of the offense and to address the goals of punishment and deterrence. The criminal conduct in this case was indisputably serious, involving an agreement with respect to huge quantities of cocaine and heroin that were to be imported into the United States. Perhaps even more significantly, the ultimate beneficiary of these transactions was represented to Bouraima to be the Taliban, and it was made clear to the

defendant that the Taliban intended to utilize at least a portion of the narcotics proceeds to purchase weapons.

Although Bouraima was one of the last defendants to join the narcotics conspiracy, he agreed to play an important role in the criminal plan. Bouraima was brought into the transaction by co-defendant Saade in order to assist with the security and transportation of hundreds of kilograms of cocaine and heroin in West Africa that would be used to fund the Taliban's violent objectives through distribution in the United States. Bouraima's specific role was to drive the heroin from the port to the safe houses in Benin, and then transport the cocaine and heroin to Ghana for importation into the United States. Bouraima also assisted with locating appropriate places to store the drugs in Cotonou. In addition to the important role he agreed to play in the conspiracy, the defendant indicated his full understanding that the ultimate beneficiary of the narcotics transaction was the Taliban and that the Taliban would use the proceeds from the drug sales to buy weapons.

For these reasons, the Government respectfully disagrees with the Probation Office's recommended sentence of five years' imprisonment. The Probation Office's recommendation for a six-year downward variance from the low end of the defendant's Guidelines range is based solely on the defendant's impoverished upbringing and difficult family circumstances. (*See* PSR at 24). These circumstances, while sympathetic and undoubtedly hard, do not justify the five-year sentence recommended by the Probation Office. It was the defendant's choice to engage in a multi-kilogram international narcotics conspiracy with purported representatives of the Taliban in the hopes of a large monetary reward. He knowingly took the risk that he would be caught and incarcerated, to his family's detriment. He is not unlike many international narcotics trafficking defendants grew up in poverty and chose to engage in illegal activity, and whose

crimes resulted in incarceration far from their homes and family. Hence, although the Government believes that a sentence below the applicable Guidelines range would be appropriate in this case, a sentence well in excess of five years' imprisonment is necessary and appropriate to provide adequate punishment for the defendant's role in a significant, global narcotics conspiracy.

A significant sentence would also serve the goals of sentencing by providing for both specific and general deterrence. A Guidelines sentence would powerfully impress upon the defendant that the costs of engaging in a narcotics conspiracy that sought to supply narcotics to the U.S., and to support the Taliban, far outweigh the anticipated financial benefits. Perhaps equally important, a Guidelines sentence will send a message to other similarly situated individuals who might choose to profit from narcotics trafficking that the United States will not tolerate such conduct, and that severe penalties will follow.

In sum, the defendant engaged in serious criminal conduct, the ultimate goal of which was to import large quantities of cocaine and heroin into the United States in order to fund the Taliban's efforts to combat American forces abroad. That conduct calls for a sentence well in excess of five years. Such a sentence is sufficient but not greater than necessary to serve the goals of sentencing.

## C.      The Defendant's Arguments for Leniency are Unavailing

The defendant seeks an even more significant variance from his Guidelines range and asks the Court to impose a sentence of time served, or approximately 30 months' imprisonment. (*See* Bouraima Sent. Ltr. at 7). In light of the seriousness of the defendant's conduct, such a lenient sentence would not comport with the goals of sentencing.

Bouraima principally contends that a time-served sentence is justified because (1) his upbringing was impoverished, (2) he was not a principal player in the conspiracy and did so only because he wanted to make money to pay for his family's basic needs, (3) he proffered extensively with the Government, (4) he has participated in various educational programs while in prison, and (5) his detention has had particularly serious consequences for his family.  (*See* Bouraima Sent. Ltr. at 5-7).

These arguments, taken individually or cumulatively, do not justify the significant downward variance the defendant seeks.  As previously discussed, the Government does not dispute that Bouraima's upbringing was extremely disadvantaged, nor does the Government dispute that the defendant's detention is a contributing factor to his difficult family situation.  Nevertheless, these factors do not justify a time served sentence for the reasons stated above.  Moreover, Bouraima's desire to support his family by participating in these crimes is a motivation shared by a great number of defendants.  It does not mitigate the seriousness of the crime or merit the kind of leniency that he is requesting from this Court.

Bouraima also argues that his acceptance of responsibility for these crimes went beyond simply pleading guilty, but included extensive safety valve proffers and participation in educational programs while in prison.  The Government agrees that Bouraima's safety valve proffers were detailed and extensive, and believes that he was truthful and forthcoming with his information.  Nevertheless, Bouraima has already received the benefit of the safety valve proffer in his reduced Guidelines range.  Moreover, Bouraima's educational efforts while in prison, while commendable, do not justify the sentence he seeks.

10

### IV. CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court

impose a significant sentence in excess of the Probation Office's recommendation of five years'

imprisonment.

Dated:      New York, New York
            August 9, 2013

                                            Respectfully submitted,

                                            PREET BHARARA
                                            United States Attorney for the
                                            Southern District of New York
                                            Attorney for the United States of America


                                    By:      /s/
                                            Christian Everdell
                                            Aimee Hector
                                            Glen A. Kopp
                                            Assistant United States Attorneys
                                            Tel.:  (212) 637-2556/2203/2210

11

**<u>Affirmation of Service</u>**

GLEN A. KOPP, pursuant to Title 28, United States Code, Section 1746, hereby declares under the penalty of perjury, that he is employed as an Assistant U.S. Attorney in the Southern District of New York, and that, on August 9, 2013, he caused copies of The Government's Sentencing Memorandum for Martin Rouf Bouraima to be served via electronic notification and email:

> Richard Rosenberg, Esq.
> 217 Broadway, Suite 707
> New York, NY 10007

> /s/
> GLEN A. KOPP
> Assistant United States Attorney

12